IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **TIMOTHY ALLEN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-3886** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Timothy Allen ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 18) and Defendant's Motion for Summary Judgment (ECF No. 22).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1981, has a GED, and previously worked as a construction laborer and cashier. R. at 22. On January 21, 2011, Plaintiff protectively applied for disability insurance benefits ("DIB") and SSI, alleging disability beginning on June 1, 2009, due to asthma, chronic back pain, bipolar disorder and depression, ADHD, and substance abuse. R. at 10, 184-96, 207, 211. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 60-135, 138-49. On July 9, 2012, ALJ G.B. Arthur held a hearing at which Plaintiff and a vocational expert ("VE") testified. R. at 30-59. Plaintiff at the hearing amended his alleged onset date of disability to January 21, 2011, and withdrew his application for DIB. R. at 33-34, 204-06. On August 20, 2012, the ALJ issued a decision finding Plaintiff not disabled since the original alleged onset date of disability of June 1, 2009. R. at 7-29. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on October 23, 2013. R. at 1-6. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On December 24, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

The Court reviews here and in Part VI below the relevant evidence related to Plaintiff's mental impairment at issue in this case.

### A.    State Agency Medical Consultants

On May 5, 2011, a state agency consultant, P. Woods, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listings 12.02, 12.04, and 12.09 relating to organic mental disorders, affective disorders, and substance addiction disorders.  R. at 66-68, 81-82.  Dr. Woods opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration.  R. at 67, 82.  Dr. Woods did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings.  R. at 67, 82.  Dr. Woods thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 70-72, 85-87) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or in proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) accept instructions and to respond appropriately to criticism from supervisors; (7) get along

with co-workers or peers without distracting them or exhibiting behavioral extremes; (8) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to (9) respond appropriately to changes in the work setting.  Plaintiff otherwise was not significantly limited.  R. at 70-72, 85-87.  Dr. Woods's RFC assessment thus provided:

> Ratings show mild to moderate limitations in areas dealing with continuity of performance and social interactions.
>
> Residual capacity finds that [Plaintiff] functions in a generally independent fashion and can meet various personal needs from a mental standpoint.  [Plaintiff] is capable of completing daily living functions within the constraints of mental and cognitive status.  This individual manages within a basic routine.  [Attention/concentration] fluctuates at times due to the effects of the conditions.  [Plaintiff] appears to have the ability to interact and relate with others socially.  [Plaintiff] can adequately negotiate in the general community.  [Plaintiff] retains the capacity to perform work-related tasks from a mental health perspective.

R. at 72, 87.

On August 26, 2011, another state agency consultant, Aroon Suansilppongse, M.D., also used the PRT to evaluate Plaintiff's mental impairments under Listings 12.02, 12.04, and 12.09. R. at 100-01, 121-22.  Dr. Suansilppongse opined that, under paragraph B of the applicable listings, Plaintiff's impairments caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two repeated episodes of decompensation of extended duration.  R. at 101, 121.  Dr. Suansilppongse also did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings (R. at 101, 121), so the doctor also assessed Plaintiff's mental RFC (R. at 104-06, 122-24) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms

4

and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) accept instructions and to respond appropriately to criticism from supervisors; (6) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to (7) set realistic goals or to make plans independently of others.  Plaintiff otherwise was not significantly limited.  R. at 104-06, 123-24.

**B.      Alison Thir, Psy.D.**

In January 2011, Dr. Thir completed a Medical Report Form 402B.  R. at 552-53.  On the form, she noted that she had treated Plaintiff on January 18 and 28, 2011, who complained of depression, racing thoughts, poor concentration, mood swings, irritability, and difficulties in sitting still.  R. at 552.  Dr. Thir's diagnoses included bipolar disorder not otherwise specified, ADHD, and a GAF score of 50.[2]  R. at 553.  Dr. Thir opined that Plaintiff had (1) moderate restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) frequent difficulties in maintaining concentration, persistence, or pace; and (4) repeated (three or more) episodes of decompensation, each of extended duration.  R. at 553.

**C.      James Detrick**

Mr. Detrick, a physician's assistant, examined Plaintiff on January 10, 2011, and opined that Plaintiff experienced (1) moderate restriction in activities of daily living; (2) moderate

---

[2]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000).  A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

difficulties in maintaining social functioning; (3) difficulties in maintaining concentration, persistence, or pace often; and (4) repeated (three or more) episodes of decompensation, each of extended duration.  R. at 390, 392, 548, 550.  Mr. Detrick opined that Plaintiff's medical condition prevented him from working from January 31, 2011, to January 31, 2012.  R. at 393, 551.

**D.      Hearing Testimony**

**1.      Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony:

At the hearing [Plaintiff] testified that he received his GED and has a history of polysubstance abuse (cocaine, alcohol, and occasional use of ecstasy), but that he has been sober since November 2008.  He indicated that he got out of jail a few weeks prior to the filing of his disability applications.

In regard to his allegedly disabling impairments [Plaintiff] testified that he currently takes Wellbutrin, Abilify, and Vyvanase for his mental symptoms.  He stated that he still has some residual anxiety, but does not have any side effects from his medication outside of some drowsiness. . . . He indicated that for the most part he gets along with others.  He is able to go out on his own but prefers to be with someone.  He also affirmed that he is currently engaged to be married and likes to play cards, play computer games, and spends time on "Face Book" and other social networking sites.  He indicated that while he was in prison he wrote a book and designed several board games that he is trying to get the games marketed by a company.  He is very proud of the board games he has created and is optimistic about their development and subsequent marketing.  He presented himself very well at the hearing and exhibited no difficulty in understanding, remembering, or responding to questions posed to him [albeit he was not always found to be credible e.g. as being precluded from all work during the period from his amended date of onset].

R. at 16-17.

**2.      VE Testimony**

At the hearing, the ALJ defined "frequent" as one third to two thirds of an eight-hour day and "occasional" as very little to one third of an eight-hour day.  R. at 52.  The ALJ asked the VE to consider an individual with a mental impairment that precluded the attention and

concentration required for skilled work but not for unskilled work and with "occasional interferences" with fatigue where the individual would be able to function satisfactorily for more than 80% of the time.  R. at 52-53.  The ALJ also asked the VE to consider an individual with "occasional interferences" with performing activities within a schedule, maintaining regular attendance for reliability purposes, being punctual within customary tolerances, completing a normal workday or workweek without an unusual length and number of rest periods, accepting instructions and responding to criticism from supervisors, and interacting and getting along with co-workers and peers.  R. at 53-54.  The VE testified that such an individual could perform the light, unskilled jobs of machine tender, packer and packaging worker, or grading and sorting worker, as well as the sedentary, unskilled jobs of small-parts inserter, finish machine operator, or quality-control worker.[3]  R. at 55-56.  This individual could not work if the individual had "frequent interferences" with the above abilities that would render that person unable to function more than 80% of the time.  R. at 54-55, 56.

## III

### Summary of ALJ's Decision

On August 20, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the original alleged onset date of disability of June 1, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R.

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  *Id.* § 416.967(b).  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  *Id.* § 416.967(a).

pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a machine tender, packer/packaging worker, grading and sorting worker, small-parts inserter, finish machine operator, or quality-control worker. R. at 13-23. The ALJ thus found that he was not disabled from June 1, 2009, through the date of the decision. R. at 24.

In so finding, the ALJ found that Plaintiff experienced (1) mild restriction in activities of daily living; (2) moderate difficulties in social functioning; (3) moderate difficulties with regard to concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. R. at 14-15. The ALJ found that Plaintiff had the RFC

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to several additional nonexertional limitations. More specifically, [Plaintiff] cannot climb ladders/ropes/scaffolds or be exposed to hazardous heights, hazardous moving machinery, or extreme temperature changes as a precautionary measure. In addition, [Plaintiff] is limited to unskilled, routine, and repetitive type of work involving occasional interactions with the public with "occasional interferences in the ability to work" due to mental functioning with regard to performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, and in completing a normal workday and/or work week without an unreasonable length and number of rest periods; and as to accepting instructions and responding to criticism from supervisors, and with regard to interacting with coworkers and peers.

R. at 16.

The ALJ gave "some" weight to Dr. Suansilppongse's assessment because it was largely supported by objective medical findings and because the opinion was consistent with other substantial evidence, including notes from Plaintiff's mental health treatment. R. at 19. In assessing Plaintiff's RFC, however, the ALJ considered additional non-exertional limitations not contemplated by Dr. Suansilppongse. R. at 19.

## IV

### <u>Disability Determinations and Burden of Proof</u>

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-9,

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 18-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  He maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work.  *Id.* at 6.  In particular, Plaintiff asserts that substantial evidence does not support the ALJ's RFC assessment because the ALJ did not explain how a person limited by mental impairments up to one third of the workday would be capable of being productive more than 80% of the time.  *Id.* at 7.  Plaintiff also contends that the ALJ's RFC assessment is erroneous as a matter of law because the ALJ did not evaluate Dr. Thir's opinion in his decision.  *Id.* at 7-9.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.  "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*, 729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was

"left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637.

Plaintiff contends that the ALJ's failure to address Dr. Thir's opinion in his decision according to 20 C.F.R. § 416.927(c) warrants remand. Pl.'s Mem. Supp. Mot. Summ. J. 7-9, ECF No. 18-1. Defendant maintains, however, that the ALJ implicitly attributed little weight to Dr. Thir's opinion. Def.'s Mem. Supp. Mot. Summ. J. 13-16, ECF No. 22-1. Defendant asserts that this Court adheres to an "implicit weight" rule. *Id.* at 13 (citing *Thomas v. Comm'r, Soc. Sec.*, No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))); *see Allen ex rel. D.D.N. v. Comm'r, Soc. Sec.*, Civil No. WDQ-12-2596, 2013 WL 3816744, at *4 (D. Md. July 19, 2013) (citing *Thomas*).

In the Fourth Circuit, however, the Commissioner "must consider all the evidence and explain on the record the reasons for [her] findings, including the reason for rejecting relevant evidence in support of the claim." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reason or for the wrong reason." *Id.* The Court "cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of

14

the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Id.* at 236 (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).

On the other hand, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Although the ALJ erred in not discussing Dr. Thir's opinion in his decision, the burden is on the party attacking an agency's determination to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009). "Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011). "[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)). Furthermore, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Rather, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding

15

is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam).

Here, Plaintiff does not show how applying the six factors in 20 C.F.R. § 416.927(c) to Dr. Thir's opinion would change the administrative result, in light of the nature, extent, and length of the doctor's relationship with Plaintiff, the supportability of her opinion, and the consistency of her opinion with the record as a whole.  First, "the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion."  20 C.F.R. § 416.927(c)(2)(i).  Dr. Thir only saw Plaintiff twice, thus entitling the doctor's opinion to less weight than if she had seen Plaintiff "long enough to have obtained a longitudinal picture of [Plaintiff's] impairment."  *Id.*; *see Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) ("The ALJ determined that the opinion of [a treating physician] was entitled to little weight because he examined [the claimant] only one time and produced a brief report.").

Second, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion.  The better an explanation a source provides for an opinion, the more weight [the Commissioner] will give that opinion."  20 C.F.R. § 416.927(c)(3).  Dr. Thir's brief and conclusory opinion regarding the degree of Plaintiff's functional limitations thus would be entitled to less weight as well.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding that ALJ permissibly rejected psychological evaluations because they were check-off reports that did not contain any explanation of the bases of their conclusions).

Third, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."

*Craig*, 76 F.3d at 590; *see Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (Posner, C.J.) (upholding ALJ's rejection of physician's check-box form where it was contradicted by evidence in record). In this regard, the ALJ here considered Plaintiff's testimony; his treatment history; the opinions of the state agency consultants and his treating and examining sources; and evidence from his non-medical sources. R. at 16-22. As Defendant points out, Mr. Detrick's opinion regarding Plaintiff's functional limitations (R. at 392, 550) was less restrictive than Dr. Thir's opinion (R. at 553). The ALJ discounted Mr. Detrick's findings and gave "greater weight to the objective medical evidence and the other credible opinion evidence of record" because Mr. Detrick's opined limitations were not supported by any objective evidence or were outside the scope of his expertise. R. at 20. Thus, "reversing the ALJ's decision solely because he failed to assign weight to Dr. [Thir's] opinion would be pointless. . . . [I]t is highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability." *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015) (per curiam). Plaintiff's contention regarding the failure of the ALJ to consider explicitly Dr. Thir's opinion thus is unavailing.

Plaintiff also maintains that substantial evidence does not support the ALJ's assessment that he would be able to remain productive more than 80% of the time with only occasional interferences with certain abilities (R. at 16, 53). Pl.'s Mem. Supp. Mot. Summ J. 6-7, ECF No. 18-1. "[T]here is not one shred of evidence in the administrative record which addresses [his] potential productivity or productivity loss as a consequence of his medical impairments." *Id.* at 7.

Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act, however. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). Plaintiff points

to no evidence that his impairments would reduce his productivity by 20%, *see Jeffress v. Astrue*, No. 3:11-CV-806-HEH, 2012 WL 3866536, at *15 (E.D. Va. Aug. 21, 2012), *report and recommendation adopted*, No. 3:11CV806-HEH, 2012 WL 3851222 (E.D. Va. Sept. 5, 2012), and "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim." *Reid*, 769 F.3d at 865. Plaintiff's contention in this regard thus is without merit.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**. The Commissioner's decision is **AFFIRMED**. A separate order shall issue.

Date: August 21, 2015                                      _____/s/_____

                                                           Thomas M. DiGirolamo
                                                           United States Magistrate Judge